THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN O'REGAN, Appellant.

Second Department, July 1, 1927.

Crimes — robbery, first degree — evidence — error to permit prosecution to prove by witnesses that they had been convicted of participation in same crime — error to strike out certain testimony by character witness — district attorney's summation unfair in part — instructions — error for court to charge that defendant could be found guilty if he did not participate in crime but concealed subsequent knowledge and took part of proceeds — errors will not be disregarded under Code of Criminal Procedure, § 542.

On this prosecution for robbery in the first degree, it was error for the court to permit the district attorney to prove by two codefendants that they had previously been convicted of participation in the same crime.

It was error for the court to strike out character testimony by one of defendant's witnesses on the theory that the witness was expressing his own personal opinion as to the defendant's reputation, since a careful reading of the testimony shows that the witness' opinion was not his own personal opinion but was based upon the actual reputation of the defendant in the community in which he lived, and upon what he had heard others say about the defendant.

The summation by the district attorney was prejudicial in that he stated that if the two women in the office which was robbed had been excitable, the defendants might be present, charged with murder in the first degree instead of robbery. Nor was there evidence to support the statement by the district attorney that the defendant had traveled for a year or a year and a half with other gunmen and men who robbed. The defendant had not been convicted previously of any crime. The portions of the summation referred to are condemned by the Appellate Division as erroneous in law.

It was also improper for the district attorney to state in effect that he would not prosecute a case unless he was absolutely sure of the defendant's guilt. The court, upon that statement being made, should have instructed the jury that the district attorney's opinion as to the guilt or innocence of the defendant should not be considered.

The contention of the prosecution was that the defendant was the driver of an automobile used by his codefendants and that he drove them away from the place where the robbery was committed, and subsequently participated in the money taken at the time of the robbery. It was error for the court to charge that even though the defendant did not know anything about the robbery, if he ascertained afterwards that his codefendants had committed a robbery and concealed that knowledge from the authorities, and also took a share of the proceeds of the robbery, he was equally guilty with the men who actually committed the robbery.

This is not a case in which the court will exercise its authority under section 542 of the Code of Criminal Procedure, for the errors committed are substantial and the defendant's rights were prejudiced thereby, and, furthermore, the evidence is not so clear and convincing as to justify the court in overlooking the errors.

APPEAL by the defendant, John O'Regan, from a judgment of the County Court of the county of Richmond, rendered on the 20th

Second Department, July, 1927.　　　　　[Vol. 221

day of December, 1926, convicting him of the crime of robbery in the first degree.

*Jacob Shientag* [*Samuel S. Liebowitz* with him on the brief], for the appellant.

*Lester L. Callan, Assistant District Attorney* [*Albert C. Fach, District Attorney*, with him on the brief], for the respondent.

KAPPER, J.　The defendant has been sentenced to imprisonment for the indeterminate sentence of from twenty to forty years upon a verdict finding him guilty of the crime of robbery in the first degree.　He was indicted jointly with Anthony Ricchetti and John P. Brennan; and upon a former trial of the three defendants, Ricchetti and Brennan were convicted, but the jury disagreed as to the present defendant.　In so far as the present record is concerned, there is no dispute regarding the facts of the robbery.

John E. Donovan, engaged in business as a contractor at Port Richmond, S. I., on the morning of September 11, 1926, drew from a bank approximately $4,500 in cash for payroll purposes, and brought the same to his office where he left it in charge of others shortly after ten o'clock in the forenoon.　The defendant, with whose father and some other members of his family Mr. Donovan was acquainted, lived about four blocks from Donovan's office.

Dorothy Simmons was Mr. Donovan's stenographer and in the office on the morning in question.　About ten-thirty o'clock Brennan, one of the codefendants, came into the office accompanied by another man.　Brennan aimed a revolver at the witness " and told me to put 'em up."　The robbery was then accomplished by the stealing of the cash which Mr. Donovan had drawn from the bank.　There is no question of the occurrence of the robbery. As the men left with their loot, Miss Simmons saw them enter a motor car which at the same moment she saw " driving up to the curb," and she thereupon looked at and noted the license number of the car and the letter " H " on its front.　There is no dispute but that this " H " represented the make of car known as " Hupmobile."

It was the theory of the prosecution that the defendant now before us drove the car.　Further, that the two men who went into Donovan's office and did the robbing were the two codefendants, Brennan and Ricchetti.　As connecting the defendant with the commission of the crime it was proved through a police officer, that the defendant told him that he was the one who drove the car; that he had put court plaster on his face so as to prevent identification; that he did not go into Mr. Donovan's office, but remained in the automobile.　These admissions of the defendant to

the police officer found some corroboration in the fact that the defendant came to the police officer's house when he told him this, and that the police officer's wife saw her husband and the defendant in conversation at the time stated and another witness saw them together at that time in the neighborhood of where he and the police officer lived.   There was also testimony which showed that defendant had been seen at prior times driving the automobile in question.   Likewise, there was testimony tending to establish acquaintanceship, for a period of some months prior to the robbery, between the defendant and his codefendants.

The defendant was a witness in his own behalf.   It is admitted that he had not been previously convicted; hence, the indeterminate sentence.   He emphatically denied driving the car in question either with or without the codefendants, and denied any connection with the crime.   There was also proof, in the nature of an alibi, that the defendant could not have been engaged in this offense.

The question as to the defendant's guilt or innocence was clearly one of fact for the jury; and their verdict finding him guilty should ordinarily be upheld were it not for errors of a substantial and prejudicial character committed on the trial.

1. After the prosecution had established the robbery and an identification of Brennan, the People called Brennan and Ricchetti as witnesses.   The district attorney urges that he had a right to call these two men as witnesses, and that right he certainly was entitled to.   He attempted to prove by Brennan his residence address in Philadelphia, with the proper object of showing that at or about and at some time preceding the robbery, the defendant had called up on the telephone from his home on Staten Island the telephone number at the address at which Brennan lived in Philadelphia.   By Ricchetti no such proof was attempted, but it would have been proper had it been sought to do so.   The effort of the district attorney to prove association and acquaintanceship between the defendant and Brennan and Ricchetti was competent.   But the district attorney went much further and interrogated Brennan regarding his conviction of this very crime and that he was at the time of trial a prisoner under that conviction.   Moreover he proved through the witness that his attorney on the trial on which he was convicted was the attorney then appearing on the retrial of this defendant.   By Ricchetti he established that he, too, was convicted for this robbery.   It was improper for the district attorney to establish, or to seek to establish, that the two codefendants had been convicted of this robbery.   They were not under cross-examination but were called by the district attorney himself, and while it was quite competent to prove by them or either of them a

residence to which the defendant telephoned in order to show possible intimacy between the defendant and these two men, to inform this jury in this way that these men who were jointly indicted with the defendant had been convicted, seems to me to have been incompetent and irrelevant testimony. That there was no mistake as to the purpose of the district attorney seems clear by his summing up, viz.: " There has been another critical, pertinent remark made concerning the presence of Ricchetti and Brennan, why did I bring them here, why did I have this spectacular demonstration, why did I bring a situation about where Ricchetti openly exclaimed that I had framed him? Why, gentlemen of the jury, because in that spirit and in that connection and in pursuance of the duty that Mr. Innes says exists on the part of a district attorney, namely, to be a quasi judicial officer, that is to act as a judge or as a judge would, determine the truth, to act fairly, to act squarely. I did not think it would be right to allow you gentlemen to feel that this man alone is the only one on trial. I wanted you to see the two men who have been convicted by a jury of this county under this same indictment at the same time that you saw the man who through the ingenuity of his counsel managed to get a mistrial. Mr. Innes: I submit that is improper and the jury should disregard that. The Court: Yes, the jury will disregard it. Mr. Fach: I did not mean to say anything improper, if it is improper I want the jury to disregard it. The Court: The only words objectionable were ' through the ingenuity of the counsel he succeeded in getting a mistrial,' those words are objectionable."

Thus we have it emphasized by the learned trial court that the one objectionable thing about it all was the district attorney's reference to counsel's " ingenuity " by means of which this defendant succeeded on the trial at which Brennan and Ricchetti were convicted in obtaining a disagreement of the jury in his own behalf. The learned district attorney points out no authority which justifies him in establishing these convictions for the purpose which he clearly indicated he intended it for, namely, that he wanted the jury to know that he was not trying the defendant alone for this robbery, but had performed his duty in obtaining the conviction of the two codefendants. And, indeed, in so far as the question has been presented to the courts, it has been held that where two persons have been jointly indicted for the same offense, but separately tried, a judgment of conviction against one of them is not competent on the trial of the other, inasmuch as his conviction is no evidence either of joint action or of the guilt of the accused. (See 12 Cyc. 445, and cases there cited.)

2. The defendant called a public officer who knew him for ten or

twelve years to testify as a character witness. The witness said he heard defendant's reputation discussed and " never knew anything wrong with him." Further, upon being pressed as to whether this reputation was " good or bad," the witness answered: " In my opinion it is good." The witness knew the defendant's family very well and knew his father who had been formerly a member of the New York city fire department. The district attorney then took up the inquiry, and, referring to the former trial of the defendant, asked the witness whether he had heard Ricchetti and Brennan as well as some detectives from Philadelphia testify on that trial. The witness expressed uncertainty as to what he had actually heard upon that trial; and then he was asked whether, notwithstanding the testimony he had heard at that trial, he still insisted that the defendant's reputation is good, to which he answered, "As far as I know, yes." Then, upon a motion of the district attorney to strike out his evidence as incompetent, the following occurred: " The Court: Alderman, are you basing this defendant's character upon what you know yourself or upon what other people have told you of and concerning him? The Witness: Of myself. The Court: Only of your own knowledge? The Witness: Yes. The Court: Not on what other people have told you about him? The Witness: Do you mean people or what I heard at this trial? The Court: People generally. The Witness: Yes, they spoke good of him. The Court: But are you basing your opinion of his reputation upon what you heard publicly or what your friends and neighbors spoke about him, or are you basing it upon your own personal knowledge? The Witness: Well, I think in addition to my own opinion. The Court: No, I am not asking you that, I am asking you if you are basing this testimony that you have given concerning the reputation of this defendant upon your own personal knowledge, or are you basing it upon the knowledge which was acquired by reason of certain information conveyed to you by other people in the neighborhood in which he lives? The Witness: No, upon my own opinion. The Court: And on your own opinion alone you are basing this testimony? The Witness: Yes. Mr. Fach: I move it be stricken out. The Court: Motion is granted. Re-direct Examination by Mr. Kelly: Q. Just a moment, you have told us that you discussed the reputation of the defendant with several people? A. I have. Mr. Fach: That is objected to if the Court please as already testified to. The Court: He has already testified to that. By Mr. Kelly: Q. And you know what they have testified to, what they have told you? The Court: He has already testified to that. Mr. Fach: He has already testified to that. Mr. Kelly: I wanted to clear it up. The Court: If he is confused, I will let

him change his testimony. Now, I thought my question was very clear to him, you understood me when I questioned you? The Witness: Well — Mr. Fach: He says distinctly he did not take — The Court: Wait a minute, Mr. Fach? Mr. Fach: He says distinctly he did not take into consideration what Malone and the other officers said that Ricchetti spoke about O'Regan. The Court: I understand that, but in answer to my questions, you understood your questions, Alderman, didn't you? The Witness: Perhaps I did. The Court: Now, did you or didn't you, which? Mr. Innes: I think, if the Court please, may I suggest something, it may not be material. The Court: No, nobody is going to suggest anything now, here is an alderman from this particular district that this man lives in who comes here and testifies as a character witness for him and I want to know what he bases his opinion on. Now, he has answered my question and after a ruling by me on his testimony he wants to change his testimony, apparently, and I am going to find out why. The Witness: I don't want to change it. The Court: You don't want to change it at all. The Witness: No. The Court: And you are basing your opinion solely on what you knew? The Witness: Yes. The Court: Strike out his entire testimony and the jury will disregard it. Mr. Innes: Exception."

In my opinion this was error. It is needless to reiterate the rulings of the courts as to the value to a defendant on trial on a criminal charge of character evidence, and his right, indeed, to have the court charge that such evidence may create a reasonable doubt where without it no such doubt would exist. It is apparent from the above excerpt that the witness, who had already testified that the defendant whom he knew for at least ten or twelve years, who lived across the street from him, whose reputation he had heard discussed and " never knew anything wrong with him " and further that, in the witness' opinion, the defendant's reputation is good, was brought to a confused state of mind by the attitude of the court and the district attorney. In my opinion, there was no material qualification upon the part of the witness of knowledge of the defendant's reputation in the community in his statement that he based this reputation " upon my own opinion." This is made clear at the end of the excerpt when, in response to the court's inquiry as to whether he was basing his opinion " solely upon what you [the witness] knew," the witness responded in the affirmative. Character evidence in a criminal trial is not hedged round with excessive strictness, nor is it regarded as lying within a narrow and undeviating groove. In *People* v. *Colantone* (243 N. Y. 134) it was held error to exclude testimony in a homicide case sought to be given by a fellow-soldier and other comrades in other branches

of the army service. The objection to the testimony was that the witnesses did not know the defendant's reputation in the community where he resided, a rule undoubtedly often enunciated. Upon the ground that the defendant sought to establish his good reputation " among those with whom he came in daily contact and with whom he had associated for years," although none of the witnesses knew him in the community of his residence, it was held that the attempted character evidence should have been admitted, and that a limitation of the evidence to the community of defendant's residence was erroneous. The subject was elaborately discussed by Judge WILLARD BARTLETT in *People* v. *Van Gaasbeck* (189 N. Y. 408); and it was pointed out that " although given in a negative form such testimony is the most cogent evidence of a man's good reputation because one's character does not get talked about until there is some fault to be found with it." (P. 420.) It was further said: " It is even competent evidence of the good reputation of an accused person that the witness has been acquainted with him for a considerable time under such circumstances as render it likely that he would have heard what was said about him and that he has never heard anything about his character — ' the fact that a person's character is not talked about at all being on grounds of common experience excellent evidence that he gives no occasion for censure or, in other words, that his character is good.' " (P. 420.)

It is to be moreover observed that a fair reading of the witness' testimony shows him as testifying that the defendant's neighbors " spoke good of him," and that upon what he had *heard* was formed such personal opinion as he had, a quite natural conclusion for a layman to come to. I do not think it can be said that in this testimony the witness can be charged with having vouchsafed an opinion of the defendant's character in no wise based upon fact.

3. The point is raised that the summation by the learned district attorney went beyond the bounds of reasonable and fair comment. For instance this: " Try him on the evidence in this case and allow all feeling of sympathy to be thrown to the four winds of heaven, for if Mrs. Donovan had been a hysterical character, this man would be here chargeable with murder in the first degree. Mr. Innes: I object to that, if the Court please, as improper argument. The Court: Overruled. Mr. Innes: Exception. Mr. Fach: It is very fortunate for Mr. Donovan that he had a wife possessed of nerve and ordinary degree of composure. Had she manifested or exhibited the slightest amount of resistance, perhaps she would, and that delightfully conscientious young lady, Miss Simmons also, might not be here to tell the tale. He is to be congratulated on

22

his good fortune, and the defendant on his good fortune in having traveled for a year with one, a year and a half with another gunman, men that carry pistols, men that rob people, and to have gotten away with it as long as he did."

Mrs. Donovan and Miss Simmons were in the Donovan office when the robbery occurred. To say that they would have been shot and that a murder would have been committed if they had been hysterical people or persons of less composure and nerve was not a fair statement for the prosecutor to make. Nor was there any evidence in the record to justify the statement that defendant had traveled for a year or a year and a half with other gunmen and men that robbed and to " have gotten away with it as long as he did."

Again, the district attorney said: " I am trying to give the People of this county the best that is in me, and I am not here today or any other day trying to prosecute men concerning whom I have the slightest doubt as to their innocence. * * * Gentlemen, if there were an acquittal in this case, if there were anything less than robbery in the first degree in this case, I say to you and I do it with the utmost solemnity, with a perfect realization that this declaration is almost the equivalent to one being made in the presence of the everliving God under oath, if you do not convict of robbery in the first degree, you are going to be part and parcel to a recurrence of similar acts of criminality, and possibly murder, on the part of this defendant."

As to that part of the district attorney's summation in which he declared, in effect, that he would not prosecute men concerning whom he had the slightest doubt as to their innocence, it is apt to quote from what we said in *People* v. *De Martine* (205 App. Div. 80, 84), viz.: " The proper attitude of the court would have been to instruct the jury that the opinion of the assistant district attorney as to the guilt of the defendant should be disregarded and that, if in the course of his summing up he had asserted his personal opinion, it was the duty of the jury to disregard that opinion entirely, and that it was highly improper for the assistant district attorney to make any statement to the jury in relation thereto." The other portions of the summation from which the quotations are made seem to me to call for condemnation by declaring them to be erroneous in law. Of course, the district attorney is entitled to and we are ever inclined to allow him reasonable and fair latitude, but this seems to me to have been transgressed in the declarations quoted.

4. The court's charge, in part, is made the subject of criticism and assigned error. Police Officer Ruggles, in detailing the defendant's admissions made to him, also testified that the defendant informed him that after the robbery he and his codefendants went

to his, the defendant's, home and distributed the money. This the defendant denied. The learned trial court charged, viz.: " So, if this defendant did not know at the time he drove up to the. Donovan office, if he did drive up — and I am going to leave that to you to say whether or not he did — if he did not know anything about the robbery and ascertained it afterwards from the two men who actually participated in it, and concealed this knowledge from the proper authorities and took a share of the proceeds, he is equally guilty with the man who went into Mr. Donovan's office, pointed the pistol at Mrs. Donovan, and took from her possession this money."

It might be that the jury could have found that the defendant drove his codefendants away from the scene of the robbery without knowing of their nefarious purpose. This charge permitted that finding. What was then charged, that if he afterwards ascertained from his codefendants the facts of the robbery and concealed this knowledge from the authorities and took a share of the proceeds, he was guilty of robbery as much so as the robbers themselves who with pointed pistol stole, was not, in my opinion, a correct statement of the law. Whether his concealment of his after-learned knowledge and his taking of a share of the fruits of the robbery constituted him an accessory after the fact, need not be decided, nor are we called upon to say that the defendant's crime in the circumstances stated by the court constituted the criminal receipt of stolen property, for of that crime he was not indicted nor tried. To this charge an exception was taken.

The learned district attorney suggests that we apply to this case section 542 of the Code of Criminal Procedure which provides that "After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." That statute has often properly and successfully been invoked by the People on appeal. But there is not only difficulty but injustice in a harsh application of it. Whenever the court is satisfied that error may have tended to affect the substantial rights of a defendant, judgment of reversal of a conviction must follow. Indeed, this has been the rule even in cases where guilt was more pronounced than here, but where it was determined that a fair trial within the ordinary acceptation of the term was not accorded. In the case at bar the jury could have rendered a verdict of acquittal without the result suffering the characterization of a miscarriage of justice. At the same time, it should be said that it was equally within the province of the jury here to find the defendant guilty. Two recent cases in the Court of Appeals point out striking limitations of the scope of section 542. In *People* v. *Purtell* (243 N. Y. 273, 275) Judge

CRANE said: "The rules of evidence, nevertheless, are to be as impartially applied to this defendant on this his third trial as if he had never before been accused of crime. Care must be taken in determining whether or not an error in the admission of evidence has affected his substantial rights not to be influenced by these previous offenses. The past life of the defendant may affect his credibility with the jury, but cannot affect the rules of law according to which all men in this State are entitled to a trial, no matter who they may be or what they have done. Our criminal procedure and our rules of evidence, according to which crimes are to be proved, may be refined until they lose much of their usefulness and cease to accomplish the purpose for which they were created. On the other hand, they must not be hastily brushed aside or misapplied in the zeal to find a guilty party. Experience has proved that a substantial adherence to our fundamental rules of evidence is the safest and wisest way to administer the criminal law. The necessity for a careful application of our rules of evidence was well stated in *Rutherford* v. *Richardson* (1923 A. C. [H. of L.] 1, by Lord BIRKEN-HEAD): 'The issues pronounced upon by Courts in criminal, and, indeed, in civil matters, are attended with such decisive consequences that the adoption in matters of evidence of a standard of admissibility which is so cautious as to be meticulous may not only be defended but is, in fact, essential.'"

In *People* v. *Sobieskoda* (235 N. Y. 411, 420) Judge POUND said: "It is the duty of this court to 'give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights.' (Code Crim. Pro. § 542.) The district attorney urges that defendant's guilt is so clearly established that his substantial rights were not affected by these errors. But the question of substantial right is not the abstract question of guilt or innocence. A guilty man is entitled to a fair trial and a trial is not fair if the verdict may be related to errors in the judge's charge. Error is substantial when we can say that it tended to influence the verdict. Nor should we 'sustain a conviction erroneously secured on one theory on the conjecture that it would have followed just the same if the correct theory had been applied.' (HIS-COCK, Ch. J., in *People* v. *Smith*, 232 N. Y. 239, 244.)"

For the errors above pointed out, I think the judgment of conviction of the County Court of Richmond county should be reversed and a new trial ordered.

KELLY, P. J., YOUNG, LAZANSKY and HAGARTY, JJ., concur.

Judgment of conviction of the County Court of Richmond county reversed upon the law, and a new trial ordered.