119 So.2d 197

**Marie Delois MILLER**

v.

**STATE.**

**4 Div. 398.**

Court of Appeals of Alabama.

Dec. 1, 1959.

Rehearing Denied Dec. 15, 1959.

---

Jas. W. Kelly, Geneva, for appellant.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant was indicted for murder in the first degree.

Her trial resulted in a verdict and judgment of guilty of manslaughter in the first degree, her punishment being fixed at imprisonment in the penitentiary for a term of two years.

The deceased and appellant had been going together some three years, the appellant during her testimony designating the deceased as her "boy friend."

The evidence presented by the State tended to show that on the morning of the shooting the appellant and deceased had gathered some collard greens. Riding back to deceased's house the appellant and deceased had a dispute relative to whether deceased had some change due appellant, and deceased slapped appellant at this time. However, everything quieted down between the two and their relations were thereafter amicable.

Arriving at deceased's place of residence the appellant and deceased went into a bedroom occupied by the deceased in the Talbot home. According to State's witness, Claudia Talbot, she heard deceased and appellant talking in a friendly manner. About 4:30 P.M., this witness heard a shot and the appellant ran out of the room saying, "I done shot Sammy, get a doctor." Appellant ran to the front of the house and asked Romax Talbot to get a doctor, and then ran into the road in front of the house and tried to stop a car and go get a doctor.

Dr. Merrill arrived at the scene about ten minutes after the shooting. He found the deceased unconscious, with a chest wound about two inches in diameter over the heart.

The appellant rode to the hospital in the car with the deceased, supporting him in her arms. At the hospital she sat in a car with Mrs. Mack White, a witness for the State. Mrs. White testified that at this time the appellant told her that the deceased had handed appellant a breached gun, and that when she closed the gun it fired, and that she did not have her hand on the trigger.

In her own behalf the appellant testified that she and deceased were completely friendly when they went into deceased's room; that after talking awhile the appellant got his shotgun and breached it to see if it had a shell in it. Finding it loaded, he handed the breached gun to appellant to replace, telling her to be careful not to touch the trigger as the gun fired easily. The appellant stated she snapped the gun together to close it, and the gun fired, the load hitting the deceased.

On cross-examination the appellant stated that while she had stated previously that she did not touch the trigger, she could not now be certain, and could not say where her hands were when she closed the gun.

The appellant also presented a number of witnesses to testify to her good reputation generally and her good reputation for truth and veracity.

Gertrude James testified that she had known appellant since she was three months old; that she knew appellant's general reputation in the community in which she lived prior to the date of the shooting, and that her reputation was good, and she would believe her upon oath.

The record then shows the following during the cross-examination of this witness:

"Q. Gertrude, you say you know her general reputation, you basing this on your own knowledge or what other people said about her? A. What I know about her.

"Mr. Gantt: We move that all statements concerning her reputation be excluded.

"The Court: Yes, I exclude all the testimony from this witness, gentlemen, you will not consider any part of her testimony. She said what she knew about her."

It is to be noted that the witnesses' answer, "What I know about her" is equivocal, particularly in light of the phrasing

of the question to which the answer was made.

Thereafter, on re-direct examination of this witness counsel for appellant, in an attempt to rehabilitate the witness asked the following:

"Q. I will ask you if you know her general reputation based upon what you have heard people say about her in the community in which she lived prior to February 8, 1959?

"Mr. Gantt: We object. The witness has already testified that she based this on her own knowledge of the defendant.

"The Court: Yes."

Thereafter, after some colloquy between counsel as to how to establish character evidence, the judge sent the witness from the courtroom announcing, "I'm not going to let her take a lesson on how to testify."

Nothing is more confusing to the average lay witness than the procedure for proving good reputation or character. Often when the preliminary question is addressed to a witness as to whether he knows the reputation, etc., the witness will reply, "It's good," or to that effect, and will have to be instructed that he must first state if he knows the reputation, etc.

■ In People v. O'Regan, 221 App.Div. 331, 223 N.Y.S. 339, 346, writing to a point similar to the one now being considered, the court observed: "Character evidence in a criminal case is not hedged round with excessive strictness, nor is it regarded as lying within a narrow and undeviating groove."

And in Sullivan v. State, 66 Ala. 48, Justice Stone observed: "The question of general character or reputation, is one of difficult solution to a majority of witnesses. Counsel should be allowed to vary the phraseology, or sever the constituent parts or members of the sentence, so as to place the subject within the comprehension of the witness."

■ In view of the fact that the witness, Gertrude James, had known appellant since she was three months of age, we think the court erred in not permitting the witness to clarify, on re-direct examination, any confusion resulting from the answers developed on cross-examination.

Further, we think the court erred in excluding the testimony of Eva Pearl Jordan, another character witness.

On direct examination Eva Pearl Jordan testified she had known appellant all her life, and based on what she had heard, she would say her reputation was good prior to the shooting.

On cross-examination she reiterated she was basing her opinion on what she had heard other people say.

Upon being asked who, she replied "the teachers in the community, and where she lived."

Upon being asked to name one, the witness named three persons, i. e., Gertrude James, John L. Trotman, and Evelyn Adams.

The record then shows the following:

"Q. This James is the one that came in here and testified? A. That's one of the teachers, yes, that taught there a long time.

"Q. What was the occasion of talking about her in the first place? A. Well, I haven't had an occasion to discuss Marie in a good while, but I taught there and I have gone in there as supervisor, and her sister was employed there in the school, but I haven't had any occasion to discuss Marie with either of these persons in some time.

"Q. And what were you discussing about her when you did discuss? A.

Oh, I haven't discussed her up until February 8th, since this came up.

"Q. Since this came up? A. Yes, I haven't discussed her with them before.

"Q. Before February 8th? A. That's right.

"Mr. Gantt: We move that all of her testimony be excluded.

"The Court: Yes, I grant the motion.

"Mr. Kelly: If the Court pleases, she just related it on conversation with two people. It does not relate to her knowledge of the other people that she might have heard throughout the community.

"The Court: She just got through saying that she had not discussed the defendant with any of these people prior to February 8th.

"Mr. Kelly: But if the court pleases, she could know her general reputation without discussing it with these specified persons.

"The Court: She said she hadn't discussed it with anybody.

"Mr. Kelly: All right, we reserve an exception.

"The Court: Gentlemen, all of this witness' testimony is excluded from your consideration."

■ A fair reading of all of the above testimony shows that this witness had known appellant all her life, and based her opinion upon what she had heard other people say. The fact that she had not discussed the appellant with Gertrude James, and appellant's sister, before the date of the offense in no way qualified her testimony that she was basing her opinion on what other people said, except as to Gertrude

James and appellant's sister. Particularly is this true when read in light of the witness' statement: "Well, I haven't had occasion to discuss Marie in a good while * * *" Even so, Gertrude James was the only one of the three persons named by witness as being one she discussed appellant's reputation with subsequent to the offense, John Trotman and Evelyn Adams being the other two also named.

The court's statement: "She said she hadn't discussed it with anybody" was, in our opinion, an inadvertent misapprehension of the witness' testimony, and in effect a comment on the effect of the evidence. His action therefore in excluding the testimony of the witness Eva Pearl Jordan was error.

Evidence of good character was of a material significance in the trial below in view of appellant's contention that the shooting was accidental. The character evidence attempted to be shown by the appellant was material and relevant.

■ An accused's good character is legal evidence, and may, when considered with other evidence, generate a reasonable doubt of guilt. Lee v. State, 23 Ala.App. 403, 126 So. 183.

We think significance is also added to the possible error resulting from the court's action in the above premises in light of the jury's finding the appellant guilty of manslaughter in the first degree, the lowest degree of homicide submitted to the jury.

In connection with the court's oral charge, we note that the court made the following statement at the conclusion thereof.

"You requested the Court to charge the jury that if they found that the defendant did not fire the gun intentionally then they could not convict, and intent is not an element of manslaughter in the second degree, and I gave your requested charge and man-

slaughter in the second degree is not before these gentlemen."

So far as disclosed by the record, no written request pertaining to manslaughter in the second degree was submitted to the court.

■ However, in event of another trial we wish to note that it is much safer to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree. Pierson v. State, 99 Ala. 148, 13 So. 550. Every accused is entitled to have charges given, which without being misleading, correctly state the law of his case, and are supported by any evidence however weak, insufficient, or doubtful in credibility. Bradberry v. State, 37 Ala.App. 327, 67 So.2d 561.

■ The evidence in the present case, as presented by the appellant, and even under the testimony of Mrs. White, a witness for the State, would necessitate the giving of a written instruction as to manslaughter in the second degree, if requested.

Reversed and remanded.