Breitel, J.
The People appeal from an order of the Appellate Division, Second Department, reversing a judgment of the Supreme Court, Kings County. After trial before the court and a jury, defendants Robert Owens and Charline Brown were Convicted of grand larceny in the first degree. Defendant Owens was sentenced to prison for a term of 5 to 10 years. On an appeal taken by defendant Owens,* the Appellate Division reversed in a memorandum opinion, two Justices dissenting in a memorandum. Leave to appeal to this court was granted by a Justice of the Appellate Division.
The issue is whether the trial court committed reversible error in permitting defendant Brown to call codefendant Owens to the witness stand, followed by Owens’ claim of privilege against self incrimination before the jury. It is concluded that this ruling was indeed erroneous, and necessarily prejudicial to Owens. Consequently, the order of the Appellate Division should be affirmed.
On April 25, 1966, defendants Owens and Brown were jointly indicted for grand larceny in the first degree in connection with the taking of money under false representations (confidence game) from one Clarice M. Harriss. The commission of the crime was established at trial through the testimony of the victim, Mrs. Harriss. Mrs. Harriss testified that on January 14, 1966 she had gone to the Chase Manhattan Bank and withdrawn her account balance of $318. Then while she was filling out a deposit slip at the Kings County Savings Bank, a man whom she later identified as defendant Owens drew her attention. *96 Holding an envelope, he told her that she had left it in a telephone booth. Mrs. Harriss denied being the owner, and, upon codefendant Brown’s prompting, Owens opened the envelope. In it he claimed to find $15,000. Mrs. Harriss, defendant Owens, and defendant Brown agreed to split up the $15,000, Mrs. Harriss to pay $2,000 for the right to receive $5,000 of the money in the envelope, Mrs. Harriss then withdrew $1,000 from her savings account and, adding it tó! the $318, gave the whole sum to defendant Owens. Needless to add, defendants Owens and Brown broke off the relationship after receiving the money from Mrs. Harriss.
The significant issues in this case concern the procedure adopted by the trial court in handling Brown’s attempt to secure the testimony of codefendant Owens for her defense. After the jury had been sworn, counsel for defendant Brown moved for a mistrial and severance on the ground that he had “ a desire to call the co-defendant as a witness. In this case, he would take the Fifth Amendment, and I can’t use him as a witness.” Owens’ lawyer did not join in the motion except to state: “ I most respectfully call your Honor’s attention to the fact that the Indictment does not allege that these two defendants acted in concert in connection with my friend’s motion.” The trial court denied the motion as belated and on the ground that “ there is nothing before this Court to indicate any such thing has developed in this case.”
Defendant Brown’s motion for a severance was renewed and denied at the close of the People’s case. Defendant Brown then called codefendant Owens as her first witness. Owens’ lawyer moved for a mistrial, arguing that: “ in view of the fact that counsel has indicated that he knows that this defendant, Owens is going to assert his Constitutional privileges, and that knowing that, and along with that jmowledge, his declaration to put my client on the stand in front of this Jury has created prejudicial error as |g,r qsjny client is concerned. I respectfully, therefore, move for a mistrial.”
The trial court denied the motion on the ground that defendant Brown ‘1 has a right to call anybody, and if he refuses to answer, I will explain it.” Thereupon, Owens claimed his privilege against self incrimination in response to the question whether he knew or had ever known defendant Brown.
*97 The trial court attempted to mitigate the prejudicial effect of the claim of privilege by instructing the jury, immediately after this episode, that: “ Number one, there is no obligation on the part of the defendant in his own case to take the stand, none at all. I shall give you detailed instructions on that later. Secondly, a man has a right not to answer if the answer might tend to incriminate him. That does not mean that innocent people do not exercise that right. You are not to infer from his refusal to answer under the circumstances that there is a likelihood of guilt because that is not the law. Innocent men have a right to assert it, and, in this instance, this man has a perfect right under the law to say what he did say, and I have sustained it. ’ ’
Moreover, in its charge to the jury, the court cautioned: “ The defendant in all cases may testify as a witness in his own behalf or her own behalf, but his or her neglect or refusal to testify does not create any presumption against him or her. The law means exactly that.”
The People concede that permitting Owens to be called to the stand over his objection was error. This conclusion is correct; the privilege against self incrimination is violated whenever a criminal defendant is compelled to take the stand and claim his privilege, whether at the behest of the prosecution or a codefendant (United States v. Housing Foundation of America, 176 F. 2d 665, 666; 8 Wigmore, Evidence [McNaughton rev. ed.], § 2268, p. 410; see Cohen v. United States, 363 F. 2d 321, 328, cert. den. 385 U. S. 957; United States v. Echeles, 352 F. 2d 892, 897; People v. Hannon, 50 Misc 2d 297, 301; People v. Krugman, 44 Misc 2d 48, 51). Important too, however, is the undoubted statutory, and perhaps even constitutional, right of a defendant to call as a witness an alleged accomplice, whether or not under indictment, a right unqualified unless arising in a joint trial and the prospective witness codefendant objects (Code Crim. Pro., § 393-a; People v. Wells, 272 N. Y. 215; People v. O’Regan, 221 App. Div. 331, 333; see Washington v. Texas, 388 U. S. 14, esp. n. 21).
The People argue, however, that the undoubted error was not prejudicial, in light of the subsequent instructions of the trial court. The stigmatizing effect, however, of claiming the privilege before the jury is so powerful that it would be unrealistic to suppose that instructions can cure it (see Flores v. United *98 States, 379 F. 2d 905, 910; De Luna v. United States, 308 F. 2d 140, 155; United States v. Housing Foundation of America, 176 F. 2d 665, supra; People v. Hannon, 50 Misc 2d 297, 302, supra [dictum]). Nor was the proof of guilt in this case, particularly on the issue of identification, so overwhelming that the error could be deemed harmless beyond a reasonable doubt (Chapman v. California, 386 U. S. 18, 24; see People v. Sobieskoda, 235 N. Y. 411, 420).
It is undoubtedly true that a party’s right to defend may be severely impaired if he cannot call his codefendant as a witness or, as the case may be, comment on his failure to testify (compare De Luna v. United States, 308 F. 2d 140, supra, with United States v. Kahn, 381 F. 2d 824, 840, cert. den. 389 U. S. 1015; Hayes v. United States, 329 F. 2d 209, 222, cert. den. sub nom. Bennett v. United States, 377 U. S. 980; United States v. Parness, 331 F. 2d 703, 705, cert. den. 379 U. S. 801). Consequently, these factors must d>e considered by the trial court in exercising its discretion whether to sever the trials of persons jointly indicted (Code Crim. Pro., § 279). Indeed, upon a proper showing of need for the codefendant’s testimony, it may be an abuse of discretion to deny severance. But there must be a showing of intention to call the codefendant as a witness and a need to do so; the mere statement of intention is hardly sufficient unless the circumstances indicate sincerity of intention and reasonable need. (See Smith v. United States, 385 F. 2d 34, 38; Brown v. United States, 375 F. 2d 310, 316; United States v. Echeles, 352 F. 2d 892, 896, supra; De Luna v. United States, 308 F. 2d 140, supra; United States v. Gleason, 259 F. Supp. 282, containing a valuable discussion of reasonable need; People v. Caparelli, 21 A D 2d 882, 883; People v. Krugman, 44 Misc 2d 48, 51, supra.)
Moreover, if a defendant knows or should have known in advance of trial of his intention to call a codefendant as a witness or that of a codefendant to call him as a witness the application for appropriate relief must be made in advance of trial, indeed, as early as it is reasonably feasible. If, however, the occasion or need for calling a codefendant as a witness does not arise until during the trial, then upon a proper showing as indicated above the trial court must consider the granting of a mistrial, if requested by one or the other of the codefendants. (See, for a parallel problem, People v. La Belle, 18 N Y 2d 405.) This does *99 not mean that a mistrial must be granted automatically but the conflicting and competing interests must either be resolved, by consent or otherwise, or, if not so resolved, then a separate trial for the affected defendants must be provided.
Of course, the foregoing considerations may not affect the absolute right of the defendant not to be compelled to take the stand in his own trial. Rather these issues may be more appropriately raised in an appeal by defendant Brown, apparently still pending in the Appellate Division.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Jasen concur.
Order affirmed.

 As of the time of the Appellate Division’s decision, defendant Brown had not yet perfected her appeal to that court.