## Rains v. Commonwealth.

Feb. 26, 1943.

Robert J. Watson for appellant.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

Opinion of the Court by Perry, Commissioner—Affirming.

The grand jury of Bell county indicted the appellant, Bill Rains, charging him with committing the offense of dwelling house breaking, denounced and defined by section 1162, Kentucky Statutes as a crime, punishable upon conviction by imprisonment in the penitentiary for not less than two nor more than ten years.

Upon his trial on the charge, he was found guilty and his punishment fixed at confinement in the state reformatory for two years.

From the judgment entered on that verdict he has appealed, asking a reversal on the ground that considering all the evidence, it is not shown the defendant either broke into and entered the house of Julia Booker, or took anything of value therefrom; and, further, that the evidence introduced on behalf of the commonwealth did no more than merely raise a suspicion that the defendant committed the crime charged, which was insufficient to sustain the verdict of guilty returned against him.

The commonwealth, on the other hand, in answer to such contention, insists that as it established by its circumstantial evidence both the essential breaking of the dwelling house and the taking of something of value therefrom, required to constitute the offense, such showing, where supported by the further proof that the stolen property was found in the possession of the defendant, or in the possession of a third person whose testimony showed he had obtained it from the defendant, was sufficient to make out a prima facie case of dwelling house breaking against the defendant.

As preliminary to our decision of the one question here presented as to the sufficiency of the commonwealth's evidence to sustain the verdict, it is to be kept in mind that to complete the charge of "house breaking," as defined by section 1162, Kentucky Statutes (Under an amendment made by Acts 1942, c.140, the law is now different. See KRS 433.180), the two facts of which the offense consists must be established: (1) The felonious breaking into the house and (2) the felonious taking away of something of value therefrom.

Appellant insists that the commonwealth's evidence was insufficient to establish these two facts, necessary,

under the statute, to sustain the verdict of the jury finding him guilty of having committed this offense for which indicted.

In view of this being the one question here presented, it becomes needful, for its determination, to summarize the evidence given by the two commonwealth witnesses and that of the appellant, who alone testified in his own behalf.

The testimony given by the prosecuting witness, Julia Booker, is to the effect that she owns a small home in the outskirts of Middlesboro, Ky., where she resides with her son, Jim Booker (or Tyle), a coal miner employed by the Big Jim Coal Co. and regularly working in its mines in Bell county. Further she testified that at the time her dwelling was broken into (about four o'clock P. M. on this occasion) and a ham taken therefrom by someone, she had left her home to go over to her daughter's, who lived nearby, for a few minutes; that on leaving her house, she closed the door and, to keep it closed, tied a cord, fastened to the door, around a nail used therefor; that upon returning to her home within a short time and opening this door, she discovered the cord was wrapped around the nail in a different manner from that in which she had wrapped it when leaving and also that there was salt on the cord of the same character as that she had used in curing the ham. Further she testified that after opening the door and going into the room where she had left the ham, she discovered it had been stolen or taken away and at once notified the police that her house had been broken into and a ham stolen therefrom; that this report soon became circulated in the neighborhood and that upon her neighbor, Harve Ellison (the other commonwealth witness) hearing it, he sent her word that he had just bought a ham from Bill Rains, the appellant, who had brought it to his house and sold it to him, at the time representing to him that he had gotten it from his brother, Garnett; that upon being so informed, she at once went to Ellison's house, where she identified the ham as hers by the marks and measurements she had made on it.

Harve Ellison, the other commonwealth witness, referred to above, gives the same account as to the appellant's having brought the ham to his house about four o'clock upon this occasion, shortly before he heard the

report that Julia Booker's home had been entered and a ham stolen therefrom by someone. Further he testified that the appellant, when offering to sell him the ham, told him it had been given him by his brother, Garnett; also, that shortly after buying the ham, upon hearing that a ham had been stolen from Julia Booker's home, he reported to her the fact of his having just bought a ham from appellant, when she came over to his home and identified it, by certain marks and measurements, as the ham taken from her home.

On the other hand appellant, who alone testified in his behalf, denied that he had either upon this occasion broken into and entered Julia Booker's house or had taken anything therefrom. He testified that he and Julia Booker's son, Jim Booker, had on the same day before he sold the ham in question to the commonwealth's witness, Harve Ellison, been drinking together and that both of them having run out of whiskey and money, Booker had said that he would go to his house, where he lived with his mother, Julia Booker, and get some meat which they could trade for whiskey and that it was accordingly agreed that he was to pick up some coal along the railroad and bring it to the Booker home and dump it into the yard, which he did, when Booker gave him the ham, which he placed in a sack and soon thereafter took it away and disposed of it to Harve Ellison; that at the time he received the ham from Booker, he had no intention of stealing it as Booker told him the ham was his. In answer to the question as to whether he thought the ham had been stolen, he said, ''Well, I would not say he stole it or I would not say he didn't, but on several occasions him and me have done things like that before.''

Further defendant, when testifying, admitted that he lied to Harve Ellison when selling him the ham by representing that he had obtained it from his brother, Garnett.

Upon the conclusion of the appellant's testimony, Julia Booker was called in rebuttal, who testified that on this day someone went into her house and took this ham (a thing of value) therefrom at about four o'clock in the afternoon, while she was making a brief visit to her daughter, her son, Jim Booker, was at the Big Jim Coal mines, where he had been for some time regularly employed and working; that he came home every night and left every afternoon to go back to work and that on

that day he had left her home at about one o'clock in the afternoon, some two or three hours before her home was broken into and her ham stolen. When asked the further question as to just the time he had left town to go to the mines in Bell county, she answered she didn't see him when he later got on the car to go to the mines, but that he could prove where he was; that she did see him leave the house at about one o'clock, which was the last she saw of him until he came back home that night.

Upon the conclusion of this testimony, no peremptory instruction was asked for by the defendant and the case was thereupon submitted to the jury under appropriate instructions based thereon, which returned a verdict of guilty.

From the judgment entered on that verdict, appellant appeals, asking its reversal on the ground that the evidence was insufficient to sustain the verdict in that it did no more than merely raise a suspicion as to the appellant's having committed this offense for which indicted.

The question, therefore, with which we are here confronted, is, as to whether or not, since under section 1162, Kentucky Statutes (KRS 433.180), under which appellant was here being prosecuted, it is essential to establish both the breaking and the taking away of property of value before he could be found guilty, there was any substantial evidence, potent to induce conviction, introduced by the commonwealth to establish these two facts.

In the late case of Nugent et al. v. Nugent's Ex'r et al., 281 Ky. 263, 135 S. W. (2d) 877, wherein the scintilla rule was abolished, it was held that where the evidence given at the trial, with all inferences that the jury could justifiably draw therefrom, is insufficient to support a verdict, so that such verdict if returned must be set aside, the trial court is not bound to submit the case to the jury, but should direct a verdict for defendant. But further it was therein said that a verdict will be set aside for insufficiency of evidence only if palpably or flagrantly against the evidence.

Here as appears from the above summary there was substantial and relevant evidence given by the prosecuting witnesses, Julia Booker and Harve Ellison, tending to establish the two facts that her house had been feloniously entered by some one while she was absent and

something of value (her ham) taken therefrom. Her statement that her house had been entered during her absence therefrom constituted substantial evidence, where drawn and supported as a reasonable inference from the facts she found, on returning to her home, that the door had been fastened by someone's wrapping the cord holding it around a nail in a different manner from that in which she had wrapped it when leaving the house and also had found the cord covered with salt of the same character as that used by her in curing the ham, which had been also presumptively taken away by the party thus feloniously entering her house.

Clearly this testimony of the prosecuting witness, based upon reasonable inference from the facts stated, was of probative value, potent to induce conviction and constituted more than a mere scintilla and therefore the verdict of the jury based thereon, finding that her house had been feloniously entered and property of value taken therefrom by the defendant, was not palpably nor flagrantly against the evidence.

To such effect is the rule as to and defining the "breaking element" of the offense of house breaking thus stated in Hawkins v. Commonwealth, 284 Ky. 33, 143 S. W. (2d) 853, 854:

> "Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch or resort to other slight physical force, is sufficient to constitute this element of the crime. Commonwealth v. Mackey, 171 Ky. 473, 188 S. W. 676; Commonwealth v. Ballard, 38 S. W. 678, 18 Ky. Law Rep. 782; Young v. Commonwealth, 126 Ky. 474, 104 S. W. 266, 31 Ky. Law Rep. 842, 128 Am. St. Rep. 326, 15 Ann. Cas. 1022."

The further phase of the question remaining is, whether the commonwealth's circumstantial evidence was sufficient to identify the accused as being the person guilty of the charge, thus established, of breaking into and stealing something of value (the ham) from Julia Booker's dwelling, for which here indicted and on trial.

While appellant's testimony was to the effect that he neither entered the house nor took the ham in question therefrom, but that it was taken and given him by the prosecuting witness' son, Jim Booker, for the pur-

pose of having him sell it to get money with which to purchase whiskey for them, the prosecuting witness' testimony, on the other hand, was that when her house was broken into and the ham taken away, as well as when it was taken to the home of Harve Ellison and sold him by the defendant, her son, Jim Booker, was not at home, but had left there some three hours earlier and at that time was working in the Big Jim coal mines, some distance away, in Bell county.

If such testimony was in fact true, clearly Jim Booker could not at that time have taken the ham in question from his mother's home and there given it to appellant to sell, as he testified. Further, it seems most improbable that, if the appellant did not himself enter the Booker house and take therefrom the ham in question but that it was there brought out of the house and given him by Julia Booker's son to sell, that he did not subpoena Jim Booker as a witness to corroborate his story that he had neither entered the house nor himself taken the ham therefrom. On the other hand he admits that he took away and sold the ham to Mr. Ellison and, further, that at such time he lied to him about how he got possession of it by stating that his brother, Garnett, had given it to him.

The rule in such case, is further, where there is substantial evidence showing a breaking and entering of a dwelling and a taking of property therefrom, which is supported by proof that the stolen property was found in the possession of the defendant, or in the possession of a third person who testifies that said property was obtained by him from the said defendant, that such showing is sufficient to make out a prima facie case of house breaking against the said defendant. This rule has been repeatedly enunciated and applied by this court. See Branson v. Commonwealth, 92 Ky. 330, 17 S. W. 1019; Webb v. Commonwealth, 35 S. W. 1038, 18 Ky. Law Rep. 220; Barnett v. Commonwealth, 230 Ky. 614, 20 S. W. (2d) 463; Owen v. Commonwealth, 181 Ky. 257, 204 S. W. 162; Schleeter v. Commonwealth, 218 Ky. 72, 290 S. W. 1075; Riggsby v. Commonwealth, 232 Ky. 226, 22 S. W. (2d) 624.

Further, as the rule is that a conviction for burglary may be sustained on circumstantial evidence alone, it follows that a conviction for housebreaking, a degree of the same offense, may likewise be sustained by such evi-

dence alone. (Section 263, Criminal Code of Practice). Moore v. Commonwealth, 188 Ky. 505, 22 S. W. 934; Howard v. Commonwealth, 192 Ky. 687, 234 S. W. 299.

Therefore, we are led to conclude, upon a consideration of all the evidence and the unreasonable contradictions asserted by appellant, that the same was amply sufficient to make out a prima facie submissible case against appellant and to support the jury's verdict finding him guilty of the offense of house breaking, for which indicted.

Judgment affirmed.