Gina IRVIN et al., Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 24, 1969.

B. G. Brammell, Radcliff, for appellants.

John B. Breckinridge, Atty. Gen., William O. Gilbreath, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Gina Irvin, Margaret Johnson, Shirley Phillips, Chalondias Brewer and Charles Edward Brewer were indicted on three counts of grand larceny arising out of the theft of clothing from three retail estab-lishments. KRS 433.220. The Brewers were convicted on two and the others on all three of the counts. They were tried jointly and appeal jointly.

The separate offenses took place on the same day. In each instance it was discovered almost immediately that garments were missing from the display racks and a report was made to the police. The reports described the suspects, some of whom were wearing blonde wigs, and in one case the store personnel and a customer saw the appellants leaving in a yellow Cadillac automobile with a white top and obtained its license number. Armed with this information, police officers very shortly apprehended the automobile and its occupants and recovered the missing garments, all of which were identified and photographed at the police station that same evening.

After the examining trial the stolen merchandise was released to the owners, and at the jury trial the photographs were used by the witnesses for the Commonwealth for convenience in describing the articles in question and testifying as to their respective retail and wholesale prices.

The stolen goods were discovered and seized by the police immediately after they had stopped the Cadillac automobile on the road. There is some question as to (1) whether the stolen goods were openly visible or were discovered pursuant to a search, and (2) whether any of the appellants, including Charles Brewer, the driver of the car, had been placed under arrest when the stolen property was found. Appellants therefore contend that this evidence was obtained in violation of their rights under the 4th and 14th Amendments of the federal constitution and § 10 of the Kentucky Constitution and should have been suppressed.

■ It was held in the recent case of Johnson v. Commonwealth, Ky., 443 S.W. 2d 20, 23 (1969), that the validity of a reasonable search based on probable cause does not necessarily depend upon an antecedent arrest or search warrant. The

facts of that case were quite analogous to those in this case. Here officers had reasonable grounds to believe the occupants of the Cadillac automobile had committed a felony or felonies and had the fruits of the crimes in their possession. Thus they were authorized to arrest the suspects at once, and to conduct a search. Under such circumstances the legal efficacy of a search does not depend on whether the officers actually had accomplished the arrest they were empowered to make. The trial court did not err in admitting the evidence.

■ When it became apparent to counsel for the appellants that the Commonwealth was intending to use photographs in lieu of the stolen garments themselves, an objection was raised in which one of the defense lawyers made the remark, "I believe there is a strict admonition that the Commonwealth must keep all this evidence in their possession at all times, and to take photographs would show laxity on the part of the Commonwealth," to which the trial judge responded, "You may take advantage of the laxity if you so desire. I think they may introduce the photographs."

■ Appellants contend that this reference by the court to the "laxity" somehow reflected an attitude on the part of the judge that they were resorting to trickery. We do not get that impression, and find the point hardly worth mention. They contend also that the photographs were not the best evidence and should not have been admitted. But this is not a fit subject for application of the best evidence rule. The Commonwealth could have proved its case without producing either the stolen property or the photographs. The photographs served merely as a convenient vehicle for refreshing the recollections of the witnesses and in facilitating their descriptions of the stolen garments. Under ordinary circumstances it is entirely unnecessary for the owner of stolen property to be deprived of it while a criminal prosecution is running its sometimes weary course through the halls of justice. If there is any real

doubt as to whether the photographs are accurate and do in fact show the articles they are purported to represent, the defendants may indeed, as observed by the trial judge, make the most of whatever "laxity" exists in that respect.

What we have said about the photographs answers yet another contention of the appellants, which is that in the case of one of the stores, from which four dresses had been stolen, only three photographs were introduced, the other having been lost. Hence, they argue, the fourth dress cannot be counted, and without it the proof falls short of $100, the low watermark for grand larceny. KRS 433.220, 433.230. As we have said, however, it was not necessary to produce either the dress or a photograph; the verbal testimony describing it was alone sufficient.

■ Appellants make further complaint of the instructions permitting findings of grand larceny based on evidence of the retail prices at which the stolen dresses were being offered for sale, whereas the wholesale prices paid for them by the respective merchants did not in any of the three instances aggregate $100. The witnesses gave both the wholesale and retail prices, and one of the owners explained that numerous items of cost go into a retailer's markup. Even, however, without the latter testimony, it is a matter of common knowledge to jurors as members of the general public that a dress cannot be purchased from a display rack in Elizabethtown for what it would bring as part of a manufacturer's or wholesaler's inventory in New York City. The retail price at which an item is offered for sale by a merchant in the ordinary course of business represents an expert's opinion of what it will bring from a willing buyer at that time and place, and a jury is free to accept it as correct. In this case the trial court instructed on both grand and petit larceny, so that if in any of the three instances the jurors entertained a reasonable doubt as to whether the value of the property stolen amounted to $100 they could find the ap-

pellants guilty of petit larceny. The instructions were patterned according to the forms set forth in Stanley's Instructions, § 925, and were not erroneous.

■ The last point is that the Commonwealth's Attorney made an improper and prejudicial remark in his summation to the jury, as follows:

"The testimony of Mrs. Lynch is that when she looked out the door, this Cadillac was headed that direction, in a northerly direction and only the head of the man driver was showing. Why? Where were the rest of them? They were in Radcliff in the car. Why did they hide if they were not guilty of anything? And why did they say, 'We better go'? Is that an indication of innocence? Because they knew the jig was up. They knew suspicion was on them. They knew Mrs. Lynch was onto them—

MR. GARDNER: Object to the use of the word "jig".

THE COURT: Overruled."

Counsel for the appellants takes the position that the word "jig" was used as a reference to their race and color. Considering the context in which it clearly was used, we cannot believe that any impartial observer could or would draw such an inference. "The jig is up" is an expression very much like and just as commonly understood as "caught red-handed." As thus used we are told by Webster's Third New International Dictionary that "jig" means a trick, game or stratagem. We are aware, of course, that sometimes the word is a crude and inexcusable name for black people. It is quite unlikely, however, that a person with the education and stature of a Commonwealth's Attorney in this state would be so callous or obtuse as to employ it in that fashion, especially during the trial of a case, and if he did, no trial judge would hesitate to take appropriate action. The Commonwealth's Attorney and Circuit Judge who participated in the trial of this case are not the type of men who would

descend to such bad taste. The only sensible conclusion we can reach is that counsel for the appellants imagines insult where it was both unsaid and unintended.

The judgment is affirmed.

All concur.