**Sidney Evert PRUITT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 3, 1972.

Rehearing Denied March 2, 1973.

Harry W. Berry, Glasgow, for appellant.

Ed W. Hancock, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

CATINNA, Commissioner.

Sidney Evert Pruitt was convicted in the Cumberland Circuit Court of grand larceny. His punishment was fixed by a jury at imprisonment for one year. He seeks reversal of this conviction, contending that the lower court erred in overruling his motion for a directed verdict on the ground that the evidence was insufficient to sustain a verdict.

Pruitt, a sewing-machine salesman and part-time farmer, lived with his wife and children on a small farm on Route 5, Glasgow, in Barren County, Kentucky. He raised tobacco and cattle in his spare time. His principal employment, however, was with Hood Sewing Center in Glasgow where he sold sewing machines. In his business he traveled throughout several surrounding counties, including Cumberland County.

Edwin and Dana Bradshaw, husband and wife, operated a garage and service station in Marrowbone which is about seven miles west of Burkesville on Highway 90, and in the direction of Glasgow.

On November 16, 1971, Pruitt left home to call on several customers in Cumberland County and to visit a livestock sale at Burkesville. On the way to Burkesville, Pruitt stopped at the Bradshaws' service station and had Dana Bradshaw put $2 worth of high-test gasoline in his car. He said that while she was putting the gasoline in his car, with her permission, he went into the office and used the telephone, and that as he went in a man was going out of the office by another door. Pruitt said that he looked up a number and dialed it, getting a busy signal. He then left the office, went out to the car, paid for the gasoline, and left. He estimates that he was in the office approximately one minute.

The Bradshaws claim that while Pruitt was in the office he rifled a cash box and took approximately $130: three 20's, two 10's, six 5's, and more than twenty 1's.

Dana Bradshaw testified that service-station income was placed in a metal cash box that was kept in the right-hand bottom drawer of a desk in the office. The telephone was on the left-hand corner of the desk. On the morning of November 16, she had counted the currency in the cash box, and needing some one-dollar bills, she removed $20 for change. The remaining currency was then stacked in the box in order: four 20's, two 10's, six 5's, and some 1's (she didn't know how many). While her husband, Edwin, watched the office she went to the bank and got twenty 1's which she placed on top of the 1's in the box. Upon her return Edwin went back into the shop, which was to the rear of the office, where he and three other men were working. Dana sat down in the chair at the desk where she remained until Pruitt drove up. From the time she returned from the bank and Edwin had gone back into the shop, there had been no customers and no one had entered the office.

Dana testified that Pruitt met her about halfway between the office and the pumps, ordered the gasoline, paid her the two dollars, asked if he could use the telephone, and upon receiving permission, proceeded toward the office. She said that after she met Pruitt she went on toward the pumps and did not look toward the office until she had finished pumping the gasoline into the car, which took from five to ten minutes; that by the time she had finished Pruitt was back outside, thanked her, got into his car, and drove away. She went back into the office where she discovered the desk drawer open and all the currency missing out of the cash box except one $20 bill.

Dana then opened the door connecting the office and shop "and hollered and

asked Edwin if he had been in there and got the money out of the money box." When he said he had not, she told him that they had just been robbed. After telling her to call the sheriff, he "took off down the road after him."

A short time after Pruitt left the service station, he was arrested at the home of Prize Johnson where he had stopped to talk with him about a gun. The Johnson home was located on Highway 90 between Marrowbone and Burkesville.

Pruitt denied taking the Bradshaws' money, voluntarily exhibited currency that he had in his wallet, and assisted the sheriff in a search of his automobile. In the course of the search, the sheriff found six 5's and twenty-seven 1's under the front floor mat of his car. Pruitt testified that he had put this currency under the mat over a period of time. He said that it was an emergency fund and one from which to make change. He also had sixteen 20's, one 10, two 5's, and one 1 in his wallet at the time of his arrest.

It is admitted that he was unknown to the Bradshaws and had not been in their service station prior to November 16, 1971.

The front of the service-station building is glass so that anyone could look in and see people in the office and, likewise, one inside could see the pumps and people operating them. The pumps were about twenty-five feet in front of the building. There was a door leading from the office to the shop, the door being approximately four feet from the desk.

Dana Bradshaw testified that no one had been in the office while she was inside and that when she went out to wait on Pruitt the money was there. She admits that she did not even glance toward the building after she went outside and that she did not see Pruitt in or about the desk or even see him enter the office or in the building. She testified that no one else entered the building through the front entrance; yet, for a period of five to ten minutes while she was outside, the entrance and in fact the whole front of the building were not observed by her. Her husband and three men were in the shop, but none of them entered the office through the connecting door because "there's something wrong with it and you hear it clear outside *if you listen to it*." (Emphasis ours.)

Edwin Bradshaw testified that he and the three other men were in the shop working. He had pulled a car up beside the door to the office and was "down" working on it. He was between the other men and the door and "nobody could have got in the office without walking over me, coming through the back." The other men did not testify.

█ The evidence against Pruitt was entirely circumstantial. The strongest link in the chain was the fact that the disappearance of the currency was discovered immediately after he had been in the office to use the telephone. However, the incriminating effect of his presence is countered by the evident fact that other persons had at least an equal opportunity to have been present.

█ Upon an examination of the entire record, we are of the opinion that the evidence is as consistent with innocence as with guilt. It is a well-settled rule in this Commonwealth that a conviction may be obtained on circumstantial evidence. However, no defendant may be convicted on such evidence if it is as consistent with innocence as with guilt. Johnson v. Commonwealth, Ky., 244 S.W.2d 736 (1951); Collinsworth v. Commonwealth, Ky., 476 S.W.2d 201 (1972); Thompson v. Commonwealth, Ky., 479 S.W.2d 583.

We recognize the fact that the circumstances may be regarded as creating a suspicion that Pruitt took the currency. However, suspicion alone is not enough. Matthews v. Commonwealth, Ky., 481 S. W.2d 647 (1972).

The judgment is reversed for proceedings consistent with this opinion.

All concur.