THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT LAWRENCE DONOVAN, Appellant.

Third Department, July 1, 1976

*William F. Wilcox* for appellant.

*William F. O'Brien, District Attorney,* for respondent.

MAHONEY, J. Four males, including defendant, and one female left New York City in the early morning hours of October 24, 1975 in two cars with the common intent of robbing Leonard's Jewelry Store in Syracuse, New York. At about 9:30 A.M. of that morning they stopped at a New York State Thruway parking lot and there Frank DiChiaro distributed revolvers to the other four and retained one for himself. At about 10:00 A.M. both cars arrived at a parking lot across the street from the jewelry store. DiChiaro, John Ruzas and the defendant, all armed, walked across the street to their target, leaving Carla Bruno and Michael Blake behind with the cars. Defendant Donovan did not enter the jewelry store. He contends he changed his mind, returned to the parking lot, surrendered his gun to Carla Bruno and disclaimed any intention to participate in the robbery. About one-half hour later DiChiaro and Ruzas returned from the store with the fruits of the robbery, and they left the area in the two cars with the defendant Donovan driving a white Cadillac with Ruzas lying on the back seat to give the impression that Donovan was alone. Forty-five minutes later the Cadillac was 37.75 miles from the robbery site traveling toward New York City on the Thruway when Trooper Dillon stopped the Donovan car. After ascertaining that Donovan's license was a forgery, Trooper Dillon had Donovan get out of the car. While frisking Donovan, the trooper noticed Ruzas in the back seat. In the course of demanding identification papers from Ruzas he removed a green coat from the rear seat. Donovan grabbed the coat and while he and Trooper Dillon were struggling, Ruzas got out of the opposite rear door and fired a shot from a .25 caliber Baretta pistol across the trunk of the car and into the officer's heart. Trooper Dillon died on the spot. Donovan and Ruzas sped away with Donovan driving. One mile away the car crashed through the exit gate and entered the Village of Canastota where they abandoned the Cadillac, commandeered a 1969 Chevrolet at gunpoint from a housewife, drove to the City of Oneida where they abandoned the Chevrolet, and took a taxicab only to be stopped and arrested at a

roadblock. The .25 caliber Baretta pistol, loaded with live rounds, was still in the possession of Ruzas.

On this appeal defendant Donovan contends (a) that the verdict of guilty of murder in the second degree (Penal Law, § 125.25) was against the weight of the evidence, (b) that section 125.25 of the Penal Law is unconstitutional, (c) that it was error to deny his motion for a separate trial, (d) that the jury panel should have been disqualified, (e) that it was error not to sequester the jury because of alleged extensive adverse publicity, (f) that he was incompetent to stand trial because of excessive use of tranguilizing drugs while incarcerated and (g) the verdicts of guilty of robbery, first degree, and criminal possession of a dangerous weapon, second degree, were against the weight of the evidence.

Contentions (b) (c) (d) (e) (f) and (g) can be disposed of readily and sequentially.

The affirmative defense provisions of section 125.25 (subd 3, pars [a]-[d]) of the Penal Law are not unconstitutional despite the requirement that the defendant has the burden of proof by a preponderance of the evidence with respect to an affirmative defense premised on the fact that he was unarmed and did not commit or in any way solicit or aid in the commission of the murder. The Court of Appeals in *People v Patterson* (39 NY2d 288), with full awareness of the holding in *Mullaney v Wilbur* (421 US 684) has concluded that so long as the prosecution must prove, beyond a reasonble doubt, the requisite elements for a conviction of the crime charged, it is not a violation of due process to permit the defendant to establish the existence of mitigating circumstances and to assign the burden of such proof, by a preponderance of the evidence, to the defendant (cf *People v Bornholdt,* 33 NY2d 75, 83). Although the Court of Appeals in *Patterson* directly dealt with only the affirmative defense of "extreme emotional disturbance" (Penal Law § 125.25, subd 1, par [a]) it, by implication, also supports the four-part affirmative defense of section 125.25 (subd 3, pars [a]-[d]).

The trial court was correct in denying defendant's pretrial motion for a severance (CPL 200.40, subd 1). The test to be applied when one of jointly indicted defendants moves for a severance is whether a separate trial will "impede or assist the proper administration of justice * * * and to secure to the accused the right of a fair trial". *(People v La Belle,* 18 NY2d 405, 411; *People v Snyder,* 246 NY 491, 497.) There is nothing

in this record which is persuasive that a joint trial would "impede" the administration of justice or deny to defendant a fair trial. A motion for a separate trial is directed to the sound discretion of the trial court, subject to review only for an abuse thereof *(People v Owens,* 22 NY2d 93, *People v Bornholdt, supra).* We find none herein.

Next, the issue of juror exclusion from the panel because of affirmative response to the inquiry as to whether said jurors held views concerning the death penalty as would prevent a finding of guilty if the crime charged was punishable by death (Judiciary Law, § 663), is moot. The defendant was sentenced to no less than 20 years to life on the murder in the second degree conviction *(People v DiPiazza,* 24 NY2d 342). Defendant's other contentions with respect to the manner in which the jury panel was chosen are meritless and have been extensively dealt with by the trial court in a decision dated June 10, 1975.

Similarly, there is no merit to the contention that extensive adverse publicity operated to deny defendant a fair trial and, further, that such publicity should have prompted the court to grant defendant's motion to sequester the jury. The question of adverse publicity in this case was before this court, prior to trial,in connection with a motion for a change of venue. (CPL 230.20, subd 2.) The motion was denied on April 24, 1975. A review of the record shows extensive *voir dire* of prospective jurors with respect to their knowledge of the case and their ability to fairly and impartially judge the case on its merits. Further, the record is replete with judicial admonitions to the jury and there is no evidence to show that such instructions were not obeyed. A motion to sequester a jury is directed to the sound discretion of the court and, in the absence of abuse, will not be disturbed. We find none.

Next, on this record there is no substance to defendant's contention that his physical and mental condition deteriorated during incarceration, both prior to and during trial, as the result of continued use of tranquilizing drugs to the extent that he became an "incapacitated person" unable to understand the proceedings and to assist in his own defense. (CPL 730.10, subd 1.) The record clearly indicates that after counsel for the defendant indicated that he might move for an adjournment in order to have his client hospitalized, the court advised defendant's counsel that should such a motion be made he was prepared to conduct a hearing to determine if he

should invoke the provisions of CPL 730.20 (subd 3) and have defendant hospitalized. Apparently, defendant's attorney was satisfied that no such relief was necessary. No motion was made and we cannot enlarge defendant's rights beyond those thought to be necessary by his counsel at trial.

The findings of guilt with respect to the counts of robbery, first degree, and criminal possession of a dangerous weapon are, under the provisions of article 20 of the Penal Law ["accessorial conduct"], essentially fact questions. After the murder defendant Donovan, with Ruzas, drove to the Village of Canastota where, at gunpoint by Ruzas, they took an automobile which defendant drove from the scene. Factually, the jury could and did find that defendant Donovan, beyond a reasonable doubt, had the requisite mental culpability to intentionally aid and assist in the Canastota robbery. Such findings cannot be disturbed.

We turn now to the principal issue of whether defendant Donovan's conviction of felony murder was against the weight of the evidence. Since the People concede that Donovan surrendered his gun to another and did not enter the jewelry store and, also, that Ruzas fired the shot that killed Trooper Dillon, the resolution of the question turns on whether Donovan's conduct, taken as a whole, made him an accessory to the predicate felony (Penal Law, art 20) and whether the murder was committed in the course of and in furtherance of such crime or while Ruzas and Donovan were in immediate flight therefrom. (Penal Law, § 125.25, subd 3.)

In connection with his "accessorial conduct" Donovan relied upon the testimony of Ruzas and Carla Bruno, who was indicted but given immunity for her testimony. They established, serially, that Donovan left New York City with four others with the intent to commit an armed robbery, that he was at the scene of the robbery and was armed, that after he surrendered his weapon he remained in the parking lot waiting for his companions to return from the jewelry store and when they did return he observed the stolen gems being placed in the trunk of the DiChiaro automobile, that he drove one of the get-away cars from the scene with one of the actual robbers as a passenger with the knowledge that Ruzas was still armed and followed the DiChiaro vehicle eastward toward New York City, where the planned crime was to terminate. This testimony, in our view, failed to preponderate in defendant's favor to the degree necessary to support his affirmative

defense pursuant to the provisions of section 125.25 (subd 3, pars [a] and [b]) of the Penal Law. Donovan never left the area of the crime after surrendering his revolver. Rather, he not only remained and waited for his companions to return, he intentionally aided (Penal Law, art 20) DiChiaro when the latter returned to the parking area with part of the proceeds of the robbery by giving to DiChiaro several sets of handcuffs to be used on jewelry store employees or patrons. Next, the testimony of Ruzas, who admitted that he robbed the jewelry store and shot Trooper Dillon, failed, in our view, to exculpate Donovan by preponderantly proving that Donovan had abandoned the crime. The totality of the testimony of Ruzas and Carla Bruno, pregnant at the time of the robbery with Donovan's child, failed, in the jury's view, to prove that Donovan was lacking the requisite mental culpability to commit the robbery. We find no reason in the record to disturb that conclusion.

The more vexing problem is whether the murder was committed in the course of and in furtherance of immediate flight from the Syracuse robbery.

Prior to 1965 only a killing in the course of the underlying felony imposed murder liability upon cofelons. But in the 1965 revision of the Penal Law (L. 1965, ch 1030), felony murder (Penal Law, § 125.25, subd 3) was extended to include killings done during "immediate flight". (Practice Commentary by Arnold D. Hechtman, McKinney's Cons Laws of NY, Book 39, Penal Law, § 125.25, p 400; see, e.g., *People v Carter,* 50 AD2d 174.) The moment that a predicate felony ends has been held a question of fact for the jury, upon proper instructions from the court *(People v Jackson,* 20 NY2d 440, 454). Therefore, whether Trooper Dillon was shot in the course of Donovan's "immediate flight" from the robbery must also be for the jury to decide.

The defendant relies heavily on the fact that when he was stopped on the Thruway by Trooper Dillon 45 minutes had passed and he was 37.75 miles distant from the site of the robbery. Distance and time alone, however, are not determinative of the issue of "immediate flight". There is no exact minute on the clock or milepost along the escape route, the passage of which terminates a crime. Where, as in the case of a daylight robbery, felons know prompt, vigorous pursuit will follow, and where they urgently and directly seek to escape the area in which they know the search will concentrate, a

jury could properly conclude that the killing of a trooper to avoid arrest was perpetrated in the course and furtherance of immediate flight.

The judgment should be affirmed.

GREENBLOTT, J. P., SWEENEY, HERLIHY and REYNOLDS, JJ., concur.

Judgment affirmed.