■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARMELO RUIZ, Appellant.—Judgment of the Supreme Court, Bronx County (Robert G. Seewald, J.), rendered on September 29, 1986, convicting defendant, following a jury trial, of burglary in the first degree and sentencing him, as a second felony offender, to an indeterminate term of from 8 to 16 years, is unanimously modified on the law to the extent of reducing defendant's conviction to burglary in the second degree and remanding the matter for resentence and otherwise affirmed.

At approximately 1:30 P.M. on October 31, 1985, Police Officers Joseph Agresta and Domenick Canale and Detective Eddie Newton responded to a radio report concerning a burglary in progress at 984 Sheridan Avenue in Bronx County. They proceeded to that location, whereupon Detective Newton went to the rear of the building, Officer Agresta started up toward the roof and Officer Canale headed to apartment 5F. Officer Canale, who was dressed in civilian clothing, heard movement inside the apartment and knocked on the door. The officer, aware that the peephole was being opened, displayed his gun and shield. Defendant herein unlocked the door and spoke with Officer Canale. Shortly thereafter, Officer Agresta, hearing that Officer Canale was speaking with someone, returned from the roof and joined his fellow officer in the apartment. Both officers noticed that a burglar-alarm system mounted on the wall behind the door inside the apartment was bent and damaged and that the apartment had been ransacked. Dresser drawers had been removed from furniture and their contents dumped on the bed, closets were ajar and disordered and a jewelry box was open.

Officer Canale then exited the apartment, leaving Officer

Agresta behind to guard defendant. He proceeded to the roof, where he looked over the edge and observed Detective Newton in the rear of the building. The two engaged in a brief conversation before Officer Canale returned to the landing. In the meantime, Officer Agresta, holding defendant at gunpoint, went to some neighboring apartments and, after interviewing the occupants, pushed defendant to the floor and informed him that he was under arrest. At that point, Officer Canale and Detective Newton arrived, and, with all three policemen present, defendant was raised from the floor, and they attempted to handcuff him. However, defendant resisted, and, in the ensuing struggle, Officer Canale was hurt. According to the testimony at trial, when the police initially tried to put handcuffs on defendant, Officer Canale grabbed defendant's left hand and Officer Agresta his right hand. Defendant responded by "pushing towards the steps" (of the staircase in the building). In an effort to subdue defendant, Officer Canale placed the former in a bearhug from behind, but the defendant seized Officer Canale's left index finger and forced it backwards, injuring the officer.

During the struggle, Ms. Corona Vasquez returned to her home, apartment 5F. Vasquez stated at trial that when she had departed that morning, she had left her apartment in order, set the burglar alarm and locked her door and windows. She had never seen defendant before, and he did not have her permission to enter the apartment. At any rate, when the policemen finally succeeded in overcoming defendant, he was cuffed to an iron railing leading up to the next landing. A search of his person revealed several pieces of jewelry which were later identified by Vasquez as belonging to her. In addition, a fingerprint found on the damaged alarm box was subsequently shown to match defendant's print.

Defendant, who took the stand in his own defense, denied any involvement in the burglary of Vasquez's apartment and contradicted the People's claim that he had her jewelry in his possession. He asserted that on the day of his arrest, he was waiting for a friend in front of Vasquez's building when three plainclothes policemen, for no apparent reason, forced him inside, dragged him up five flights of stairs into apartment 5F and arrested him for burglary. However, he did admit to resisting the officers' efforts to handcuff him. The jury, evidently accepting the version of events offered by the prosecution, convicted defendant of burglary in the first degree, and defendant has appealed.

Defendant urges that the People have failed to establish the

crime of burglary in the first degree and that the court's instruction to the jury on reasonable doubt constituted reversible error. We find that there is merit to the first of these contentions. In that connection, section 140.30 of the Penal Law provides that

"[a] person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime * * *

"(2) Causes physical injury to any person who is not a participant in the crime".

Defendant argues that since the injury herein occurred after he had already been arrested, when the officers attempted to handcuff him, he could not lawfully be convicted of first degree burglary.

The question of whether an act takes place in "immediate flight" from a felony is generally left to the sound determination of the jury pursuant to an appropriate charge *(People v Gladman,* 41 NY2d 123). In *People v Bleakley* (69 NY2d 490), the Court of Appeals, in discussing the review power of an intermediate appellate court, noted that there are two standards of intermediate appellate review—legal sufficiency and weight of evidence—each of which, while related, requires a different analysis. Thus, the court declared (at 495):

"For a court to conclude * * * that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial *(Cohen v Hallmark Cards,* 45 NY2d 493, 499) and as a matter of law satisfy the proof and burden requirements of every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

"To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test. Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting

inferences that may be drawn from the testimony' * * * If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict (CPL 470.20 [2])."

While great deference must be accorded to the jury's fact finding, and appellate courts should exercise care not to substitute their judgment for that of the jury, who are in the best position to hear the testimony and observe the demeanor of the witnesses, the evidence in the instant situation is not open to dispute. Regardless of whether defendant can be deemed to have been arrested immediately after admitting Officer Canale into apartment 5F, or not until he was pushed to the floor by Officer Agresta following the latter's conversations with residents in the building, defendant was assuredly under arrest prior to the time that he resisted the police effort to place him under physical restraint. Moreover, the commission of the crime of burglary had actually terminated when Officer Canale entered the apartment and, consequently, was over well before the time of defendant's attempted escape. To the extent that the jury may have concluded that no arrest was effectuated until defendant was actually handcuffed and that the offense continued until that time, this is simply erroneous as a matter of law. Indeed, long before the scuffle with the police, defendant "was being detained under threat of police firearms and by words" under circumstances which made it evident that he was not free to leave *(People v Brnja, 50 NY2d 366, 372)*. The law is settled that an arrest occurs when an individual is not at liberty to walk away *(see, People v Brnja, supra; People v Diaz, 131 AD2d 690)*.

Therefore, this court need not proceed further than the first of the aforementioned standards referred to by the Court of Appeals in *People v Bleakley (supra)*—legal sufficiency of the evidence—since there is no view of the evidence herein which would lead a reasonable person to find that the People had satisfied their burden of demonstrating every element of burglary in the first degree. In the matter before us, defendant voluntarily opened the door to Officer Canale, subsequently accompanied Officer Agresta without incident as Officer Agresta interviewed some of the neighbors, and also did not resist being put on the floor. By that time, the burglary was clearly over, and defendant was certainly not at liberty to leave. His ensuing struggle with the police, as well as the injury inflicted upon Officer Canale, was, thus, not a continuation of the burglary and did not involve the "immediate flight therefrom", but constituted an entirely new offense. Accord-

ingly, the conviction herein should be reduced to burglary in the second degree and defendant resentenced on that charge. We have considered defendant's second argument relating to the adequacy of the charge on reasonable doubt and find it to be without merit. Concur—Ross, J. P., Asch, Milonas, Rosenberger and Wallach, JJ.