234 N.J. Super. 388 (1988)
560 A.2d 1279
STATE OF NEW JERSEY, IN THE INTEREST OF J.R. AND H.O.,
Superior Court of New Jersey, Chancery Division Family Part, Essex County.
Decided October 11, 1988.
*389 Elmer J. Herrmann, Jr., attorney for the Juvenile, J.R.
Bross, Strickland, Cary & Grossman, attorneys for the Juvenile, H.O., (Charles M. Grossman, of Counsel).
Herbert H. Tate, Jr., Essex County Prosecutor, attorney for the State, (Nicholas S. Rosamilia, Assistant Prosecutor, of counsel and on the brief).
*390 FUENTES, J.S.C.
Two juveniles, J.R. and H.O., are charged with felony murder for causing a death during an automobile chase following the commission of a burglary. On July 1, 1988, the State filed a motion requesting that the case be referred from the Superior Court, Chancery Division, Family Part, to the Law Division, for trial of the juveniles as adults pursuant to N.J.S.A. 2A:4A-26a(2)(a). A third juvenile, E.T., is also charged but is under 14 years of age and therefore not subject to referral.
At issue is the meaning of "immediate flight" within the context of the New Jersey Code of Criminal Justice's felony murder provision, N.J.S.A. 2C:11-3a(3).
On June 4, 1988, six juveniles left Newark in a stolen Chevrolet Camaro for the purpose of stealing another vehicle. They arrived in Jersey City that evening and pulled into a K-Mart parking lot on Route 440. The Camaro stopped next to a Chevrolet van owned by Beverly Wade. Wade had parked her vehicle in the lot at about 7:15 p.m. Three of the juveniles, J.R., H.O., and E.T., left the Camaro and broke into the van. The juveniles started the van and J.R. drove it out of the lot with H.O. and E.T. as passengers.
At approximately 7:48 p.m., Officer Charles B. Casserly of the Jersey City Police Department was on routine patrol proceeding north on Route 440. As the officer approached the intersection of 440 and Danforth Avenue, he observed the van and the Camaro coming from the opposite direction on Route 440, approximately 500 feet from the K-Mart parking lot. At the intersection, both vehicles made an illegal left turn and pulled into a restaurant parking lot, a short distance from the intersection. Casserly followed the juveniles and activated his police emergency lights and siren. The Camaro and the van suddenly accelerated, fleeing north on Route 440. The Camaro then crossed the highway center divider and proceeded north in the south bound lane, against the flow of traffic. Officer James J. Lynch, who had been parked on the highway divider, *391 observed the chase and took up the pursuit of the Camaro as Casserly continued after the van. The Camaro then turned into a shopping mall where it was parked and abandoned. All three of its occupants were later captured and taken into custody.
In the meantime, the van continued its flight, weaving in and out of traffic while disregarding a number of traffic signals. Near the intersection of Route 440 and Routes 1 & 9, the van struck the highway curb divider blowing out both tires on the left side. Notwithstanding, the van continued for several more miles through Kearny and into Newark. Officer Casserly testified that the speed of pursuit began at about 60 or 70 miles per hour, then dropped to about 25 to 30 miles per hour as the van shredded its deflated tires.
In Newark, at the intersection of Raymond Boulevard and University Avenue, J.R. drove the van through a red traffic signal, striking the side of a car being operated by Julia Woods. The force of the impact ejected Woods from her vehicle. She died later that day from injuries sustained in the accident. The juveniles were taken into custody at the scene.
Under the Criminal Code's felony murder provision, homicide constitutes murder when a person, acting alone or in concert with others, is engaged in the commission of, or attempts to commit one of six predicate felonies, of which burglary is one, and "in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants." N.J.S.A. 2C:11-3a(3).
The State claims that in the course of committing a burglary into a vehicle in Jersey City, and in "immediate flight therefrom," the juveniles caused a death. Defense Counsel argue that the juveniles were not immediately fleeing from a burglary since the State's proofs show that the van was parked at about 7:15 p.m., whereas Casserly's pursuit began after 7:48 p.m. Furthermore, they contend, the burglary was completed in Jersey City after the juveniles entered the vehicle and drove it out of the parking lot. Thus, they argue, the death in this case *392 occurred during the commission of an auto theft under N.J.S.A. 2C:20-7, or while "joyriding," under N.J.S.A. 2C:20-10, but not in the course of a burglary. Accordingly, defense counsel request that the court not find probable cause as to felony murder.
Some support for this thesis is found in Kaplowitz v. State Farm Mutual Automobile Ins. Co., 201 N.J. Super. 593 (Law Div. 1985). In that case, a juvenile had stolen a car at a train station and drove it around the station for about two hours. Finally, he lost control of the car and drove it into a tree, resulting in serious personal injuries. The court found that the burglary of the car was completed prior to the accident and that rather than committing a burglary, the juvenile was taking a joyride. He was therefore found eligible for no-fault personal injury protection benefits (PIP) under his mother's insurance policy. N.J.S.A. 39:6A-4; N.J.S.A. 39:6A-7(a).
As in Kaplowitz, the juveniles here argue that the burglary in Jersey City was completed when they drove out of the parking lot. Therefore, the predicate offense (burglary) must be severed from the subsequent homicide. The Court notes, however, that Kaplowitz was a civil case addressing a question of PIP insurance coverage pursuant to remedial legislation. N.J.S.A. 39:6A-16; Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981). The general purposes of the Criminal Code have an entirely different perspective. N.J.S.A. 2C:1-2a.
Prior to the enactment of the Criminal Code in 1979, New Jersey followed the res gestae theory of felony murder. Under this theory, a killing amounted to murder when committed in an attempt to conceal the crime, to protect the criminals in the possession of the loot or to facilitate their flight. In these instances, the killing was deemed so closely connected with the original offense as to be part of the underlying criminal act. N.J.S.A. 2A:113-1, 2A:113-2 (repealed); State v. Holland, 59 N.J. 451 (1971); State v. Artis, 57 N.J. 24 (1970); State v. *393 Hauptmann, 115 N.J.L. 412 (E. & A. 1935); State v. Gimbel, 107 N.J.L. 235 (E. & A. 1930).
The new Code eliminated many of the categories created by the res gestae theory and restricted the application of the felony murder concept to killings committed during "the course of" or "during immediate flight" from one of six serious and violent crimes. This change from prior law made it clear that causing a death during immediate flight from the underlying crime would constitute murder. In enacting this statute the New Jersey Law Revision Commission which proposed the felony murder rule that is now N.J.S.A. 2C:11-3a(3), followed an almost identical provision found in the New York Penal Code. See, The New Jersey Penal Code, Final Report of the New Jersey Law Revision Commission, Vol. II: Commentary, p. 157 (1971), New York Penal Law, 125.15, subd. 3., (L. 1965, Ch. 1030). Although neither New Jersey's nor New York's Penal Code defines the term "immediate flight," the New York courts have had occasion to address this issue in varying contexts. People v. Gladman, 41 N.Y.2d 123, 390 N.Y.S.2d 912, 359 N.E.2d 420 (N.Y.Ct.App. 1976); People v. Donovan, 53 A.D.2d 27, 385 N.Y.S.2d 385 (N.Y. App. Div. 1976); People v. Irby, 61 A.D.2d 386, 402 N.Y.S.2d 847 (N.Y. App. Div. 1978).
In the Donovan case, supra, the court upheld a conviction for killing a trooper 45 minutes and 37 miles from the scene of a robbery as having been committed in the course and furtherance of immediate flight. "Distance and time alone," the court noted, "are not determinative of the issue of `immediate flight.'" 385 N.Y.S.2d at 389. Moreover, the determination of when a predicate crime ends and whether a killing is committed in the course of immediate flight, is a matter properly left to the trier of fact. People v. Donovan, 385 N.Y.S.2d at 389; See also State v. Smith, 210 N.J. Super. 43, 40-51 (App.Div. 1986), certif. den. 105 N.J. 582. In People v. Irby, supra, flight from a burglary resulting in a death was found to be subject to the felony murder rule where defendant was in constructive possession of the fruits of the crime after the killing. 402 N.Y.S.2d at *394 853-854. And, in a case with a factual backdrop similar to the present matter, a California court held that the felony murder rule was applicable to an unintentionally caused death during a high-speed automobile chase following the commission of a burglary of an unattended motor vehicle. People v. Fuller, 86 Cal. App.3d 618, 150 Cal. Rptr. 515 (Cal.Ct.App. 1979).
In People v. Gladman, supra, the New York Court of Appeals addressed the issue of when the underlying crime ends, so as to require its severance from a subsequent murder. In that case, the court outlined a number of factors that the trier of fact should consider as to the issue of immediate flight:
The jury should be instructed to give consideration to whether the homicide and the felony occurred at the same location or, if not, to the distance separating the two locations. Weight may also be placed on whether there is an interval of time between the commission of the felony and the commission of the homicide. The jury may properly consider such additional factors as whether the culprits had possession of the fruits of criminal activity, whether the police, watchmen or concerned citizens were in close pursuit, and whether the criminals had reached a place of temporary safety. [41 N.Y.2d at 128, 390 N.Y.S.2d 912, 359 N.E.2d 420.]
It is certainly apparent that "immediate" is not a term that requires a precise tick of the clock or measured distance along the escape route. People v. Donavan, 385 N.Y.S.2d at 389. It is a term that can be taken to mean "a reasonable time in view of the particular facts and circumstances of the case under consideration." Black's Law Dictionary, 675 (5th ed. 1979). "No individual factor is necessarily controlling; it is the combination of several factors that leads to a justifiable inference." People v. Gladman, 41 N.Y.2d at 128, 390 N.Y.S.2d 912, 359 N.E.2d 420.
In the present case, the reasonably credible testimony permits a finding that the juveniles were first observed by police at approximately 500 feet from where they committed a burglary of an unattended motor vehicle. Although the van was parked at 7:15 p.m. by the owner and the juveniles were first observed by police at 7:48 p.m., it is reasonable to infer that the juveniles had just broken into the van and they were making good their *395 escape when spotted by Officer Casserly. The juvenile's response to the police emergency signals was sudden acceleration and immediate flight. Although the van struck a curb blowing out two tires, the juvenile continued driving for several more miles on metal rims. This demonstrates the juveniles were aware of the close pursuit and were urgently seeking to prevent their arrest. In the course of this flight, and while in possession of the fruits of the burglary, they caused a death. The burglary, flight and death in this case represent a continuous, indivisible transaction. Additionally, the juveniles had not reached any place of temporary safety nor was there any indication that they sought to abandon the object of the crime, the van.
The jurisdictional waiver statute requires the State to present proof establishing "probable cause to believe that the juveniles committed a delinquent act or acts which if committed by an adult would constitute," criminal homicide. N.J.S.A. 2A:4A-26a(2)(a). The probable cause aspect of this hearing, therefore, does not involve issues of guilt or innocence, but rather whether the evidence presented would warrant a prudent person to conclude that the charged offenses had been committed. State in the Interest of B.T., 145 N.J. Super. 268, 273 (App.Div. 1976), certif. den., 73 N.J. 49 (1977). And, in determining the adequacy of the evidence, the State is to be awarded every reasonable inference. State v. New Jersey Trade Waste Assn., 96 N.J. 8, 27 (1984).
Under the particular facts and circumstances of this case and on the basis of the credible evidence, it is reasonable to find probable cause to believe that the victim's death occurred in the course of the juvenile's immediate flight from a burglary of a motor vehicle and that the juveniles committed acts which if committed by an adult would constitute criminal homicide.
The Court reserves decision on the State's motion to transfer from the Family Part to the Law Division pending a hearing as to probability of rehabilitation.