Leo BAKER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–SC–000598–DG.

Supreme Court of Kentucky.

July 1, 1993.

Edward E. Dove, Lexington, for appellant.

Chris Gorman, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

The Kentucky Supreme Court hereby affirms the decision of the Court of Appeals in this matter. This Court hereby adopts the opinion of the Court of Appeals by Johnson, J., with Lester, C.J., and Schroder, J., sitting.

On October 22, 1990, Leo Baker, the appellant in this case, along with an accomplice entered a home (hereinafter "the Collins home") in Powell County without permission from the owner. Upon being surprised by Lemoise Tyra, who had arrived to clean the home legally, the men explained that they were searching for a lost dog and departed posthaste. Mrs. Tyra telephoned her husband, Ray Tyra, and gave him a description of the intruders. Shortly thereafter, and not far away, Baker and his accomplice were apprehended by Mr. Tyra and his friend, Bill Morgan. Within minutes a police officer arrived. Mr. Tyra and Morgan warned the officer that Baker was trying to reach for his hip pocket. The officer then searched Baker and found a .38 caliber handgun in the hip pocket. Shortly after that, Lemoise Tyra identified Baker and his accomplice as the men she had seen previously in the house. After a trial, Baker was convicted of first-degree burglary and sentenced to twelve-years imprisonment. On appeal Baker has two complaints. First, he says that the Commonwealth failed to prove the elements of first-degree burglary beyond a reasonable doubt.[1] Second, he complains that the Commonwealth did not arrest him in a valid way, and that the handgun should therefore have been suppressed. Finding no error, we affirm the judgment of the circuit court.

Baker asserts that the Commonwealth failed in its proof because there was no testimony at trial showing that he was armed while he was in the Collins' home. Baker admitted that he possessed a gun before he approached the Collins' home, and he most certainly possessed a gun when apprehended—some three tenths of a mile away and within fifteen to twenty minutes of leaving. Baker testified, however, that he placed the gun under a rock before entering and retrieved it after leaving the home. He contends, therefore, that there is no evidence that he was armed at a time relevant to the burglary. There are two ways to approach this problem. On the one hand the issue may be stated as whether the jury could infer from the above-listed facts that Baker had a gun while he was inside the home. Alternatively, assuming that Baker was unarmed while in the home, the issue would be whether Baker was apprehended in the course of his *immediate flight* from the home (in which case it does not matter whether he was armed inside). We believe that both issues must be answered in the affirmative.

[redacted] "It is a well-settled rule in this Commonwealth that a conviction may be obtained on circumstantial evidence." *Pruitt v. Commonwealth*, Ky., 490 S.W.2d 486, 488 (1972); *see Hollowell v. Commonwealth*, Ky., 492 S.W.2d 884 (1973); *Rains v. Commonwealth*, 293 Ky. 429, 169 S.W.2d 41 (1943). The circumstantial evidence showing that Baker possessed a gun while in the Collins' home is clear; the jury would have been well within its rights in disbelieving Baker's testimony to the contrary. In any event, we believe that Baker was still in immediate flight from the Collins' home when apprehended.

[redacted] We have not found any Kentucky cases defining the precise limits in time and space of "immediate flight." But the provisions of the penal code should be construed "according to the fair import of their terms, to promote justice, and to effect the objects of the law." KRS 500.030. It seems clear that the aggravating factors in the first-degree-burglary statute were enacted to punish

1. KRS 511.020 Burglary in the first degree.

(1) A person is guilty of burglary in the first degree when, *with the intent to commit a crime*, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

(2) Burglary in the first degree is a Class B felony.

those who harm or threaten harm to those at the scene of a burglary. The statute does not limit itself to consideration of acts which take place within the curtilage of the dwelling being burglarized, but is written to protect occupants, neighbors, and passers-by. In this case, the burglars were apprehended within minutes by a neighbor and a passer-by. Tyra and Morgan are among the people whom the Legislature sought to protect, and we are unwilling to read the statute so narrowly as to place the appellant's actions outside its terms. We hold that Baker was still in the course of his immediate flight from the Collins' home when he was apprehended. *See People v. Gladman*, 41 N.Y.2d 123, 390 N.Y.S.2d 912, 359 N.E.2d 420 (N.Y.1976) (felon held to have been in "immediate flight" some 15 minutes after and one-half mile away from the scene of a robbery); *State In Interest of J.R.*, 234 N.J.Super. 388, 560 A.2d 1279 (1988) (homicide in Newark held to have been committed in course of "immediate flight" from burglary which occurred in Jersey City); *cf. Thomas v. State*, 708 S.W.2d 580 (Tex.Ct.App.1986); *People v. Ruiz*, 136 A.D.2d 493, 523 N.Y.S.2d 814 (1988). We also hold that the statute does not require that a burglar be armed at every moment during his flight from the dwelling. If a burglar arms himself at any time while in immediate flight from the dwelling he may be convicted of first-degree burglary. Thus, even if Baker's story were true, he was still properly convicted.

 Baker's next complaint is that the handgun should be suppressed because the police, in contravention of KRS 431.025,[2] never told him that he was being arrested or for what he was being arrested. Baker fails to realize that "the validity of a reasonable search based on probable cause does not necessarily depend upon an antecedent arrest or search warrant." *Irvin v. Commonwealth*, Ky., 446 S.W.2d 570, 571 (1969), *cert. denied* 400 U.S. 880, 91 S.Ct. 61, 27 L.Ed.2d

61 (1970). Moreover, even when the police officer lacks probable cause for an arrest, he may make a reasonable search of the person of a suspect in order to disarm the suspect. *Phillips v. Commonwealth*, Ky., 473 S.W.2d 135 (1971). That being so, police noncompliance with KRS 431.025 has no bearing on this case. Officer Epperson, the first police officer on the scene, was abundantly justified in believing that appellant had just committed a felony and that he might have had a weapon on his person. The search being reasonable, there is no reason to suppress the evidence that was obtained by it.

The judgment of the circuit court is affirmed.

All concur.

---

2. KRS 431.025 Notice of intention to arrest; act of arrest; force

(1) The person making an arrest shall inform the person about to be arrested of the intention to arrest him, and of the offense for which he is being arrested.

(2) An arrest is made by placing the person being arrested in restraint, or by his submission to the custody of the person making the arrest. The submission shall be in the actual presence of the arrester.

(3) No unnecessary force or violence shall be used in making an arrest.